## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MAYRA COLON-CUEBAS**,
    Petitioner,

v.                                                          Civil No. 19-2065 (BJM)

**COMMISSIONER OF SOCIAL
SECURITY**,
    Defendant.

## OPINION AND ORDER

Mayra Colon-Cuebas ("Colon") seeks review of the Social Security Administration Commissioner's ("Commissioner's") finding that she is not entitled to disability benefits under the Social Security Act, 42 U.S.C. § 423. Colon claims that the administrative law judge ("ALJ") improperly ignored Colon's purported bipolar disorder and schizophrenia at Step Two and that these supposed conditions rose to the level of severe impairments. Docket No. ("Dkt.") 29. The Commissioner opposes. Dkt. 32. This case is before me by consent of the parties. Dkts. 9, 16, 17, 18. For the reasons set forth below, the Commissioner's decision is **VACATED** and remanded.

## APPLICABLE LEGAL STANDARDS

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere

scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in

Appendix 1 of the regulations, impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, at which point the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant's impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final Step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following facts are drawn from the transcript ("Tr.") of the record of proceedings at Dkt. 20.[1]

Colon was born on October 19, 1969. Tr. 31. Colon obtained her GED but has no higher education. Tr. 374. She is unable to communicate in English. Tr. 31. Her most recent job was at a Walmart in Orlando, Florida as a cashier. Tr. 61. Colon had previously worked as a demonstrator giving out samples at Sam's Club and had also worked washing cars; she then worked at Flying Food Group as a food service supervisor where she helped cater food for airlines. Tr. 60-62. Her date last insured was December 31, 2020. Tr. 358. On May 4, 2016, Colon filed for disability, claiming an onset date of April 25, 2015. Tr. 22, 358. On September 12, 2016, Colon's disability claim was denied. Tr. 22. On December 9, 2016, her request for reconsideration was denied. *Id*. Colon then requested a hearing before an ALJ and an ALJ hearing was held on October 25, 2018. Tr. 41.

On December 10, 2015, Dr. Luis Ramos Vargas[2] ("Dr. Ramos"), a psychologist, treated Colon. Tr. 180. Dr. Ramos noted that Colon was very anxious and depressed and that she had suffered abuse and abandonment by her father as a child. *Id*. Dr. Ramos stated that Colon had a structured suicide plan, that she had attempted suicide before, that she had a bottle of pills hidden from her partner, and that she had been hearing auditory hallucinations that included commands for her to kill herself. *Id*. He also noted that she had a family history of mental illness, that she suffered from panic attacks, and that she was isolated and did not leave her home. *Id*. Dr. Ramos

---

[1] Colon essentially raises only a single claim regarding the ALJ's purported failure to find that Colon had the severe impairments of schizophrenia and bipolar disorder at Step Two. As a result, in this section I only include facts from portions of the transcript that are potentially relevant to this claim.

[2] The record is not precise as to who treated Colon, but the medical license number given corresponds with Dr. Ramos's license number.

therefore referred Colon for hospitalization. Tr. 181. Colon was discharged from Pavia Hospital in Hato Rey on December 11, 2015 with "no psychosis" and without being suicidal; she was given a Global Assessment of Functioning score of 60%. Tr. 178. She was found to need supervision of her medicine intake and condition. *Id*. At the time, she was prescribed Celexa, Ativan, Ambien, and Seroquel. *Id*. She was diagnosed with anxiety disorder and major depressive disorder, recurrent and moderate, as well as dyslipidemia. *Id*.

On May 20, 2016, Dr. Ramos referred Colon to a Dr. Rodriguez and sent an accompanying message in which Dr. Ramos reported that Colon's behavior was continuing to deteriorate and that she was continuing to isolate herself; that she suffered from hallucinations, continued to hear voices, and imagined burning down the house and cutting or using a machete on her partner; that she had no sexual impulse; that she suffered from insomnia despite taking a prescription to treat it; that she had become apathetic; and that her memory was deteriorating as well. Tr. 148, 179. He stated that he diagnosed Colon with schizophrenia as a result. *Id*.

In a function report dated May 24, 2016, Colon noted that she lived with family and a boyfriend. Tr. 77. She claimed that her anxiety caused her to develop tachycardia, nausea, vomiting, diarrhea, headache, and other symptoms just at the thought of leaving the house; she also claimed that she would only leave for medical appointments as a result. *Id*. She described being able to watch TV, take her own medications, cook, bathe herself, and feed and let out her dogs. Tr. 78. She noted having difficulty remembering to bathe consistently, having constipation, and only changing into clothes instead of pajamas if she was leaving the house. *Id*. She described typically only combing, coloring, or cutting her hair if her boyfriend prompted her to do so; noted that her hands would shake if she was late taking her medication, and sleeping excessively, but also cooking, washing, washing clothes, sweeping, and mopping at times. Tr. 79. She did not note

that she was able to ride a bike, drive a car, walk outside, or use public transportation when prompted to do so, noting in particular that she could not go out alone due to her nerves and was afraid to drive due to nerves and anxiety. Tr. 80. However, she was able to handle all of her own money matters independently. *Id*. She also described herself as spiteful and antisocial and noted that she preferred to be around her dogs, claiming to have trouble getting along with others as a result. Tr. 82. She claimed to have difficulty seeing, hearing, completing tasks, remembering, concentrating, and following instructions, particularly noting that she had difficulty finishing what she started and stating that she would pay attention to things but then forget them quickly. *Id*. She also claimed to be able to follow written but not spoken instructions. *Id*. She did not note any issues with interacting with authority figures and claimed to have never been fired from a job because she was unable to get along with others, but she stated that she handled stress badly because of her nerves and claimed that she did not have any routine. Tr. 83. She also said that she did not experience any side effects from her medications. Tr. 84.

In another function report misdated by Colon but seemingly from around the same period, she claimed to have panic attacks when she left the house, stated that she would forget things and drop things due to her nerves, and would otherwise experience the same symptoms she averred in the other function report when having to go out of her home. Tr. 85. She noted being able to brush her teeth, take her own medications, and perform chores like washing clothes, scrubbing, and taking care of her dogs. Tr. 86. However, she also noted that she suffered from insomnia and that her medications were not fully effective in treating it, that she wore pajamas all the time, that she sometimes forgot to bathe, was afraid to drive in a car even as a passenger, and rarely remembered to shave. *Id*. She noted that her boyfriend would drive her places, comb her hair, bathe her, and dress her, and noted that a neighbor would do the yardwork, but that she could wash clothes, wash

dishes, and cook for herself even though she did not like to do so. Tr. 87. She claimed not being able to go out alone because she could not remember and did not know how to go anywhere. Tr. 88. She claimed to watch very little TV and spend most of her time with her dogs, although she would text her daughter and sometimes her son as well. Tr. 89. She claimed to need to be reminded to go places as well even though she would only go to her medical appointments. *Id*. She noted that she disliked talking to or being friendly with anyone, stated that she had become more distant from people and that people would call her antisocial, and noted trouble with talking, hearing, seeing, remembering, concentrating, completing tasks, understanding, getting along with others, and following instructions; however, she did not note any trouble with using her hands. Tr. 90. She found it difficult to walk far without resting for a few minutes, noted that she could only pay attention for a short time, and stated that she did not finish what she started and could follow written but not spoken instructions. *Id*. She noted that she used glasses and believed that she needed to use them all the time; she also claimed to be more anxious than ever, with less desire to live and constant depression. Tr. 91. Her other responses were largely the same as the ones given in the other function report.

In another function report from October 15, 2016, Colon claimed to not be able to be on her feet very much due to back pain and the fact that she would get tired very easily from walking. Tr. 95. She also claimed to get anxiety from leaving the house and that she had to take notes because she would forget everything. *Id*. She also noted having insomnia. Tr. 96. She also noted being able to take out the trash and being able to clean the bathroom along with performing other chores like cleaning, mopping, sweeping, and washing clothes if her boyfriend encouraged her to do those things. Tr. 97. She noted becoming incontinent if she had to leave the home. *Id*. The hobbies and interests she noted included caring for her animals, using her tablet, and texting her

children (but no one else). Tr. 99. She also expressed difficulty with lifting, squatting, bending,

standing, walking, kneeling, and stair climbing, among other things, but not understanding, using

her hands, getting along with others, hearing, or talking. Tr. 100. However, she did note that she

had trouble getting along with others because she did not talk with anyone and was antisocial. *Id*.

She also stated that she could only walk 10 to 20 steps at a time before needing to stop and rest.

*Id*. She claimed that she had been fired or laid off because she was a supervisor, but other

employees did not respect her and complained to the human resources department about her. Tr.

101. She also noted that she had been having a lot of nightmares where she would get hurt, then

would go out to her balcony and would have insects come and land all over her body. *Id*. Colon

stated that she was experiencing side effects from her medications, including sleepiness and nausea

from Ativan and Paxil and constipation from Seroquel. Tr. 102. Her other answers were largely

consistent with the other function reports.

On June 1, 2016, Dr. Olga Rodriguez Olaverri ("Dr. Rodriguez"), a psychiatrist from APS

Clinics, evaluated Colon, noting that she had a history of mental illness stemming from a few years

back. Tr. 240. Dr. Rodriguez recommended Ambien, adding Restoril, and increasing her Seroquel

intake in order to decrease her symptoms of sadness, insomnia, and severe anxiety. *Id*. Dr.

Rodriguez also noted that she had a history of psychiatric hospitalization as well as lipid disorder.

*Id*. Dr. Rodriguez stated that Colon's hygiene, dress, and verbal expression were appropriate, that

her behavior was cooperative, that her thought process was logical and relevant as well as coherent,

that she displayed no delusions, and that she was not suicidal or homicidal, but that her mood and

affect were anxious, that her impulse control was poor, and that she had moderate attention

disorder. Tr. 241. Dr. Rodriguez found that Colon was oriented in time and person but did not note

that she was oriented in place, situation, or space; she noted that Colon's remote memory was fully

intact but that her recent and immediate memory were only fair; and she stated that Colon's concentration and introspection were diminished and that her judgement was only fair rather than good. Tr. 242. Dr. Rodriguez diagnosed Colon with major depressive disorder, recurrent and severe with psychotic symptoms; general anxiety disorder; and mixed hyperlipidemia. *Id*. Colon's medications at the time included Celexa, Seroquel, Tamazepam, and Ativan. *Id*.

On June 24, 2016, Colon underwent a clinical interview and mental status evaluation with Dr. Yaleska Colon Cordova ("Dr. Cordova"). Tr. 191. Colon reported always feeling depressed and feeling particularly nervous on the day due to having to leave the house; she reported having been abandoned by her mother and always feeling empty inside as a result. Tr. 188. Dr. Cordova noted that Colon's signs and symptoms included sadness, low self-esteem, anxiety, insomnia, and loss of energy; she also noted that Colon had a history of psychiatric hospitalizations, with the most recent one coming in December 2015. *Id*. At the time of the interview, Colon was taking Ativan, Celexa, Seroquel, Temazepan, and Relafen; Colon reported that the medicines made her feel relaxed. *Id*. Dr. Cordova noted that there was no history of psychiatric conditions in Colon's family; she also noted that Colon had a good relationship with her supervisors and peers while she was still working and that she had the ability to follow instructions and perform assigned tasks without difficulty. Tr. 188-89. Dr. Cordova also noted that Colon presently had the ability to self-care, but that she did not have friends, preferred to be alone, did not receive visitors, and did not tolerate the stresses of everyday life, although she could make decisions and complete tasks. Tr. 189. Colon's attitude was apparently cooperative and friendly; she came across as easily distracted; she was able to communicate well and her thought process was logical, coherent, and circumstantial; her affect was adequate; and her mood was anxious with regular impulse control. *Id*. Colon denied or did not report hallucinations, perception disorder, and psychotic symptoms as well as homicidal or suicidal

ideas; she was oriented in time, place, situation, and person; and Dr. Cordova noted that she had

no history of phobia, compulsion, or obsession. *Id*. Dr. Cordova also noted that Colon's short-term

memory was decreased and that she could only remember two out of eight words after a minute;

that her recent memory was appropriate and that her long-term memory seemed intact; that her

ability to interpret was good; that her simple math skills were intact; and that her social judgment

and common sense were good. Tr. 189-90. She was diagnosed with major depressive disorder,

single episode and moderate; general anxiety disorder; and other problems related to psychosocial

circumstances. Tr. 191. Dr. Cordova found that Colon was able to maintain adequate social

interactions and was without limitations to performing daily tasks of living as well as some

activities, but she noted that Colon's main area of difficulty was anxiety; nevertheless, Dr. Cordova

believed that Colon's prognosis was good. *Id*.

On July 13, 2016, Dr. Gladys Jimenez Nieves ("Dr. Jimenez"), a psychologist, found as

part of a state agency consultative examination that there was no medically determinable

impairment for the period at issue because Colon claimed April 25, 2015 as her onset date, but

there was no evidence in the file regarding her mental condition until December 16, 2015. Tr. 347.

Dr. Jimenez went on to acknowledge that Colon had an affective disorder and an anxiety-related

disorder, but she found that Colon had only mild restrictions in her daily living activities; moderate

difficulties in maintaining social functioning and maintaining concentration, persistence, or pace;

and no repeated episodes of decompensation of extended duration. Tr. 349-50. Dr. Jimenez also

found without providing any analysis that "paragraph C" criteria had not been satisfied. Tr. 350.

Dr. Jimenez also noted that Colon had understanding and memory limitations, sustained

concentration and persistence limitations, social interaction limitations, and limitations in her

ability to adapt. Tr. 350. However, Dr. Jimenez found that that Colon retained the ability to

understand, remember, and execute simple and detailed tasks, the ability to persist at work activities for up to two hours, and the ability to adjust to changes while interacting with the public, coworkers, and supervisors. Tr. 353-54. Ultimately she found that Colon's statements about her symptoms were not entirely consistent with the medical record. Tr. 351. Colon was determined to not be disabled. Tr. 355. On December 7, 2016, Dr. Luis Umpierre ("Dr. Umpierre"), a psychologist, approved Dr. Jimenez's assessment in a follow-up state agency consultative examination. Dr. Umpierre noted that Colon's new medical findings still described the same level of severity of her symptoms and that there were not substantial changes in her functional limitations. Tr. 366, 372.

On July 20, 2016, Dr. Isabel Cestero ("Dr. Cestero") performed an internist evaluation on Colon. She noted that Colon had a history of emotional disorder with depressive disorder from childhood; Colon had apparently been abandoned by her mother and treated poorly by her alcoholic father. Tr. 709. Dr. Cestero noted that Colon had heart palpitations associated with her anxiety, although at the examination her heart rhythm was deemed regular. Tr. 709-10. She was diagnosed with emotional disorder as well as several physical ailments. Tr. 711.

On April 12, 2017, a social worker by the name of Zaskia Algarin Castro ("Algarin") noted that Colon reported having anxiety, crying constantly, being sad, and having insomnia; she also noted that Colon reported getting very anxious about leaving her house to the point of having diarrhea and vomiting the day before having to leave. Tr. 289. Algarin noted that Colon reported being very afraid, having auditory hallucinations, and being without medical treatment for the past two months due to insurance reasons. *Id*. However, Algarin also noted that Colon denied having visual hallucinations or being suicidal or homicidal. *Id*. Algarin stated that Colon's current symptoms included crying, sadness, anxiety, fear, and insomnia. Tr. 290. Algarin also noted that

her hygiene was good; that her behavior and affect were adequate; that her mood was euthymic; that her speech was clear; that she was oriented in time, person, and place; that her thought process was relevant, coherent, and logical; that she had no perceptual disturbances; and that her judgment, introspection, and thought content were all adequate. Tr. 290-91.  Algarin noted that Colon needed to work on her depression and anxiety symptoms and recommended that she see a psychiatrist, undergo drug therapy, and see a psychologist. Tr. 291. Algarin diagnosed Colon with bipolar disorder, with a current episode of mixed and severe without psychotic features. Tr. 292. Algarin noted that Colon had poor management of emotions and anxiety and put her on a regimen of learning techniques and skills to manage these conditions. Tr. 293.

On April 17, 2017, Dr. Solveig Berrios Hayes ("Dr. Berrios") noted that Colon had a history of bipolar disorder and noted that she was exhibiting a host of symptoms, including sadness, frequent crying, anhedonia, low energy, insomnia, poor appetite, bad mood, irritability, excessive anxiety, excessive restlessness, and lack of relaxation. Tr. 286. Dr. Berrios noted that Colon was not homicidal or suicidal, that she had not been self-mutilating, and that she had good hygiene and adequate behavior for the situation, but that her affect was sad. *Id*. She also noted that her mood was euthymic; that her speech was clear; that she was oriented in time, person, and place; that her thought process was relevant, coherent, and logical; that she had no perceptual disturbances; and that her judgment, introspection, and thought content were all adequate. Tr. 287. Dr. Berrios assessed Colon as having bipolar disorder, with a current episode of mixed and severe without psychotic features. Tr. 288. On the same day, April 17, Dr. Juan Nunez Nieves ("Dr. Nunez"), a psychiatrist, evaluated Colon, noting that she had a history of bipolar disorder and that she took medication due to changes in mood, irritability, impulsivity, and insomnia. Dr. Nunez stated that Colon was alert, active, and oriented; that she was logical and coherent; that she had no suicidal

or homicidal ideation; that her memory was intact; and that she had adequate impulse control. Tr. 294. He diagnosed her with bipolar disorder, with a current episode of mixed and severe without psychotic features. Tr. 295. He also noted that her current prescribed medications were Paxil, Ambien, Seroquel, and Ativan. *Id*. He instructed her to return as necessary. *Id*.

On May 15, 2017, Dr. Nunez saw Colon again; she reported feeling well, with no suicidal or homicidal ideation and not perceptual disturbances; she was also calm and sleeping well, denying any problems and possessing a stable mood. Tr. 296. Dr. Nunez did note that Colon was suffering from a little anxiety still, but that she was alert, active, oriented, logical, and coherent, and that her memory was intact. *Id*. Dr. Nunez did note that her bipolar diagnosis remained active. *Id*. However, Dr. Berrios saw Colon on the same day and reported that Colon claimed to be very sad recently; in Dr. Berrios's view, her diagnoses and symptoms otherwise remained the same. Tr. 298-300. An evaluation by Dr. Carmen Vazquez Ortiz, a psychiatrist, notes similar findings without providing much in the way of detail. Tr. 301-02.

Progress notes from Dr. Berrios dated December 5, 2017 show that Colon claimed that things had been "horrible since the hurricane." Tr. 303. According to the notes, Colon was currently presenting symptoms of deep sadness, anhedonia, lack of appetite, bad mood, irritability, excessive anxiety, fears or phobias, and frequent nightmares; her mood was apparently depressed and her affect sad as well. Tr. 303. However, the notes reflect that Colon was not suffering from such symptoms as frequent crying, low energy, social isolation, insomnia, anger, obsessive thoughts, abnormal sexual behavior, hallucinations, or delusions. *Id*. She apparently had good hygiene, appropriate behavior, clear speech, appropriate judgment, adequate introspection, no perceptual disturbances, and no alterations in memory. *Id*. The notes go on to become somewhat inconsistent, stating among other things that Colon was not suffering anxiety despite already saying that she

was suffering from excessive anxiety; in any case, the majority of Colon's other findings were normal, reflecting no depression, obsession, or mania, among other things. See Tr. 303-05.

On February 7, 2018, Dr. Flor Diaz Fontan ("Dr. Diaz"), a psychiatrist, noted that Colon was not suffering from depression, anxiety, obsessive or compulsive behavior, mania, psychosis or hallucinations, impulsivity, trauma related to stressors, substance abuse, or aggression. Tr. 308. Dr. Diaz did note that Colon had memory changes with immediate, intermediate, and remote memory. *Id*. However, her hygiene was apparently good, her motor activity adequate, her attitude cooperative, her behavior organized, her speech clear, her affect adequate, her mood euthymic, her perception undisturbed, her concentration and attention adequate, her orientation good, and her judgment adequate. *Id*. She could apparently do light housework, manage money, prepare meals, shop for groceries or clothes, take medications, travel, and use technology including the telephone. *Id*. She had no suicidal or homicidal ideation either, and Dr. Diaz made a treatment plan under which Colon was to begin decreasing her medication and reevaluating her treatment plan. Tr. 309. Dr. Diaz also diagnosed her with recurrent and mild major depressive disorder while recognizing her active bipolar diagnosis. Tr. 310. She remained on the same medications. *Id*.

On the same day, February 7, Dr. Berrios noted that Colon reported improvement in her mood and suggested interventions to help curb Colon's sadness, low levels of activity, anxiety, and problems with decision-making. Tr. 311-12. Also on the same day, Dr. Berrios and a Mayra Colon Cuebas ("Cuebas") noted that Colon was presenting sadness, frequent crying, anhedonia, low energy, insomnia, poor appetite, bad mood, irritability, excessive anxiety, excessive restlessness, lack of relaxation, and somatic symptoms (numbness in her hands, arms, and legs, with pain as well); however, she was not presenting as suicidal or homicidal, was not self-mutilating, and had good hygiene and adequate behavior. Tr. 314. Colon reported that "nothing is going to change"

and was resistant to suggestions about how to make even small changes in her life. Tr. 315. She was again diagnosed with bipolar disorder, current episode mixed and severe without psychotic features.

On March 7, 2018, Cuebas and Dr. Berrios came to essentially the exact same findings as at Colon's previous visit, but noted that Colon reported feeling upset, that she was against medication changes made during her last visit, and that she was still resistant to suggestions and unwilling to make changes, displaying little introspection. Tr. 318.

On April 4, 2018, Dr. Diaz saw Colon and noted mostly normal findings, including no depression; however, Dr. Diaz did note constant tension and excessive worry due to anxiety, poor tolerance, depressed mood, and worry about daily life situations. Tr. 320-321. Dr. Diaz noted again that Colon had memory changes with immediate, intermediate, and remote memory. *Id*. Dr. Diaz also noted that she had bipolar disorder but characterized it as depressed and moderate instead of severe. Tr. 323. Dr. Berrios and Cuebas saw Colon on the same day and noted similar findings to previous visits, except that they no longer noted somatic symptoms, characterized Colon's mood as depressed and her introspection as superficial, and noted that she reported feeling dizzy and tired. Tr. 323-25. They agreed with Dr. Diaz's characterization of her bipolar disorder as depressed and moderate. Tr. 326.

On June 6, 2018, Dr. Diaz saw Colon again and noted that she was suffering from auditory and visual hallucinations, although her insomnia had apparently improved. Tr. 328. Her findings were otherwise largely normal, and Dr. Diaz did not note any anxiety, depression, suicidal or homicidal tendencies, or worry about life situations. Tr. 327-29. Dr. Diaz noted that she still had bipolar disorder at a depressed and moderate level. Tr. 330.

At the ALJ hearing on October 25, 2018, Colon testified to feeling primarily emotionally disabled, stating that she got ill when she would leave the house and would experience panic attacks, diarrhea, vomiting, fear, nausea, heat and cold, crying, and an urge to use the bathroom. Tr. 53, 56. She stated that she and her partner shared household chore duties. Tr. 54. Colon noted that she could not remember many things, that she could not concentrate, that she slept for most of the day, that she could sleep at night, that TV bored her but that she found some entertainment from reading celebrity gossip on her cell phone, and that she would sometimes text with her neighbor. Tr. 55-56. She stated that her partner did most of the shopping alone and that she did not go out, except that sometimes her partner would take her to the doctor. Tr. 55. She noted that she had not been trying to look for work because she felt that she could not leave the house. Tr. 56. Colon admitted to having not seen a primary care doctor in over a year despite experiencing significant physical pain. *Id*. Colon claimed that the first time she was hospitalized for her emotional condition was in December 2015. Tr. 57. She testified to having cut herself on her arms to deal with her depression, that she had the daily desire to hurt herself, and that she sometimes wished she could go to sleep and never wake up again. *Id*. She also noted that she had been diagnosed with panic attacks and schizophrenia. Tr. 58.

In her determination, the ALJ found that Colon met the insured status requirements of the Social Security Act through December 31, 2020; that she had not engaged in substantial gainful activity since April 25, 2015, her alleged onset date; and that she had the severe impairments of major depressive and anxiety disorders. Tr. 25. The ALJ did not find that Colon's purported conditions of bipolar disorder and schizophrenia were severe impairments, nor did she discuss the possibility that they were impairments or discuss mental symptoms or issues at all at Step Two of her analysis. *See* Tr. 25-26.

The ALJ then found that Colon did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 26. In reaching this conclusion, the ALJ considered "paragraph B" and "paragraph C" criteria. She noted that in order to satisfy the "paragraph B" criteria, Colon would have to have mental impairments resulting in at least one extreme or two marked limitations in the following four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself. *Id*. The ALJ found that Colon had only moderate limitations in all four areas. Tr. 26-27. The ALJ also noted that in order to satisfy the "paragraph C" criteria, Colon would have to demonstrate a medically documented history of a mental disorder that has lasted at least two years, then further show that she relies on medical treatment, mental health therapy, psychosocial support, or a highly structured setting to diminish the symptoms of that mental impairment, and that despite these diminished symptoms and signs she has only achieved marginal adjustment. Tr. 27. The ALJ acknowledged that Colon's mental disorder was documented for over two years and that she underwent regularly scheduled mental treatment, but she found that the record did not show that Colon had achieved only marginal adjustment. *Id*.

The ALJ then found that Colon had the RFC to perform a full range of work at all exertional levels, but with several mental limitations. Tr. 27-28. In reaching this conclusion, the ALJ provided somewhat extensive analysis of Colon's mental limitations, acknowledging that she alleged symptoms of anxiety, panic attacks, depression, tendencies to self-isolate, and auditory hallucinations, among other things. Tr. 28. However, the ALJ found that her statements and allegations were not entirely consistent with the medical record. Tr. 28-29. Among other things, the ALJ noted that Colon's symptoms were attenuated with regularly scheduled appointments and

the use of medications. Tr. 29. The ALJ analyzed the analyses provided by state agency psychologists and concluded that the opinions should be accorded only partial weight but with great weight given to their conclusions except for their conclusions regarding Colon's ability to interact with others. Tr. 30. The ALJ specifically noted that the state agency psychologists' opinion that there was not enough evidence to support the presence of a medically determinable impairment as of the alleged onset date was not consistent with the evidence received at the hearing level. *Id.*

The ALJ went on to find that Colon was unable to perform any past relevant work. Tr. 31. However, the ALJ found that there were still jobs that Colon could perform that exist in significant numbers in the national economy. Tr. 32. As a result, the ALJ found that Colon was not disabled. Tr. 33.

Colon requested that the Social Security Administration Appeals Council review the ALJ's determination and the Appeals Council denied her request. Tr. 1. Colon then filed the present action on November 13, 2019. Dkt. 2.

## DISCUSSION

There are a couple of preliminary matters to attend to in this case. First, Colon cites other medical evidence that is not in the administrative record and was not presented to the ALJ because it postdates the ALJ's determination. The Commissioner argues that such evidence cannot be considered. Without either approving of or rejecting the Commissioner's argument on this point, I deem it unnecessary for me to consider such evidence in order to rule on the present matter. However, the ALJ should determine whether this evidence should be considered on remand.

Second, Colon claims that the ALJ erred because she failed to acknowledge that Colon has been hospitalized. However, besides one or two vague references to prior hospitalizations, the

record only includes information about one hospitalization, and the ALJ references this hospitalization in her determination. *See, e.g.*, Tr. 28. Colon's claim as to this point therefore fails.

As to Colon's main argument, "[w]hen a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence 'establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered.'" *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986) (quoting Social Security Ruling 85–28). The ALJ provides no analysis suggesting that Colon's purported bipolar disorder or schizophrenia are only slight abnormalities with no more than a minimal effect on Colon's ability to work.

However, erroneously failing to consider an impairment at Step Two is nonetheless harmless if the ALJ finds at least one severe impairment at Step Two and proceeds to consider all potentially pertinent impairments and symptoms at Step Three. The Commissioner argues that courts in other circuits have held that Step Two errors are harmless if the ALJ "continues with the sequential analysis." *Stanton v. Astrue*, 370 F.App'x. 231, 233 n.1 (2d Cir. 2010); *Salles v. Comm'r of Soc. Sec.*, 229 F.App'x. 140, 145 n.2 (3d Cir. 2007). The cases cited by the Commissioner in support of this point are not particularly compelling.[3] Nevertheless, I follow the similar principle established in the First Circuit that "an error at Step 2 is uniformly considered harmless, and thus

---

[3] Each of the cases states the principle cited by the Commissioner in a footnote as dicta, and neither fully supports the principle in a logical fashion. *Stanton* merely states that "[e]ven if we were to reach the merits of Stanton's argument, we would not identify error warranting remand because the ALJ did identify severe impairments at step two, so that Stanton's claim proceeded through the sequential evaluation process"; meanwhile, *Salles* states that "[b]ecause the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless" and cites *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005), though *Rutherford* does not clearly stand for the same proposition. *Id*.

not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civ. No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination." *Hines v. Astrue*, No. 11-CV-184-PB, 2012 WL 1394396, at *13 (D.N.H. Mar. 26, 2012) (quoting *Heatly v. Comm'r of Soc. Sec.,* 382 F.App'x 823, 824–25 (11th Cir. 2010). Colon argues only that the ALJ failed to properly consider the medical evidence in this case, not that the ALJ's failure to do so necessarily changed the outcome of her claim. *See* Dkt. 29 at 5.

The only question remaining, therefore, is whether the ALJ sufficiently demonstrated that she considered all of the claimant's impairments in combination, including bipolar disorder and schizophrenia. The Commissioner acknowledges that the ALJ did not expressly consider bipolar disorder or schizophrenia at Step Two but argues that in reading the ALJ's decision as a whole, it is clear that the ALJ did in fact consider those impairments and their effects upon Colon's ability to function.

I am not convinced by the Commissioner's argument that the ALJ clearly considered bipolar disorder and schizophrenia in coming to her determination, let alone that she considered the two potential impairments at all. First, the ALJ fails to explicitly mention either condition in her determination despite ample references in the record to both conditions and Colon's testimony at the hearing before the ALJ stating that Colon suffered from schizophrenia. It does not inspire confidence that the ALJ adequately considered the conditions if she never even names them.

Second, the ALJ makes few references to symptoms and events that the record suggests accompany Colon's schizophrenia and bipolar disorder. For instance, although the ALJ briefly

acknowledges Colon's hospitalization and its cause, she does not acknowledge that at the time or soon after a doctor noted that Colon had attempted suicide before, that she had hidden pills away (seemingly for the purpose of attempting to overdose), that she was experiencing auditory hallucinations at the time that included commands for her to kill herself, and that she was also experiencing urges to burn down her house and attack her partner with a machete. The ALJ also never acknowledges that Dr. Diaz noted just months before the ALJ hearing that Colon was suffering from visual as well as auditory hallucinations. Several other symptoms supported by the findings of medical professionals who treated Colon go essentially unacknowledged by the ALJ that could either relate to her bipolar and schizophrenic conditions or to her depression or anxiety instead, but either way would ideally have been more fully acknowledged and evaluated within the ALJ's determination. Such symptoms include, but are not necessarily limited to, references to a family history of mental illness, lack of sexual impulse, apathetic state, anhedonia, insomnia, poor appetite, bad mood, irritability, and restlessness.

Third, out of Colon's symptoms potentially related to schizophrenia and bipolar disorder that the ALJ does acknowledge, the ALJ implies that certain of the symptoms – such as auditory hallucinations, Colon's tendency to self-isolate, and panic attacks – are symptoms that Colon merely *alleged* even though the record shows that medical professionals also believed that these symptoms existed. Furthermore, although the symptoms are not supported by a doctor's opinion, the ALJ also characterizes Colon's purported repulsion to the idea of leaving her home manifesting itself in the form of vomiting and diarrhea simply as something that happens to her when she runs errands, which is misleading at best; the ALJ also fails to mention other symptoms that Colon claims arise alongside her fear of leaving her home, such as panic attacks and incontinence.

Fourth, there are multiple fairly egregious errors in the ALJ's analysis at Step Three, where the ALJ is meant to consider all of Colon's impairments, severe or not, in combination. *See Hines*, 2012 WL 1394396 at *13. This would, of course, necessarily include bipolar disorder and schizophrenia if those conditions existed. By way of example, the ALJ claims that Colon did not allege difficulties getting along with others, but in making this claim the ALJ cites portions of the record in which Colon does in fact allege that she has difficulty getting along with others. *See* Tr. 82, 90.[4] This could affect the ALJ's "paragraph B" analysis of Colon's symptoms significantly, as the ALJ found that Colon only had moderate limitations when it came to interacting with others in part because the ALJ claimed that Colon did not allege that she had difficulties in this area. If the ALJ had found that Colon's limitations in this area were greater, then the "paragraph B" criteria potentially could have been satisfied. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 at 12.00F ("To satisfy the paragraph B criteria, your mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning. Under these listings, the five rating points are defined as follows: . . . . c. *Moderate limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair. d. *Marked limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is

---

[4] There are several other citations supporting statements made by the ALJ at Step Three that are either to the wrong part of the record or are entirely incorrect. For instance, the ALJ cites portions of Exhibit 33F in several places, but the corresponding portions of 33F often do not contain any reference to the principles that the ALJ cited 33F for (although other portions of 33F sometimes do). The ALJ also claims that Colon alleges that she experiences somnolence and drowsiness as side effects of her medication in Exhibit 6E, but the only side effect that Colon alleges within Exhibit 6E is constipation. However, Colon does state that Ativan and Paxil make her sleepy and nauseous in Exhibit 10E (Tr. 102). The ALJ also includes citations that simply do not exist, like citations to Exhibit "7E at 5" even though 7E is only a two-page exhibit (though in that particular instance the ALJ may mean to cite to the second half of Exhibit 6E instead). Each of these errors compounds my worry that the ALJ has not adequately or accurately considered Colon's symptoms.

seriously limited. e. *Extreme limitation*. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.").

Furthermore, the evidence that the ALJ cites in support of the notion that the record reveals that Colon's memory is overall "intact" does not fully support this claim; one of the two citations that the ALJ provides actually states that while Colon's remote memory was fully intact, her recent and immediate memory were only fair. Tr. 242. Put another way, the doctor examining Colon declined to say that her recent and immediate memory were fully intact despite being prompted by an option to do so. Additionally, there are portions of the record that the ALJ elides which state that Colon's memory was or is deteriorating. *See, e.g.*, Tr. 148. If the ALJ had found that Colon's limitations related to memory were greater or that both Colon's memory limitations and Colon's ability to get along with others were only slightly greater, then yet again, the "paragraph B" criteria potentially could have been satisfied. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 at 12.00F.

Again, the Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen*, 172 F.3d at 35; *Ortiz*, 955 F.2d at 769. Here, the ALJ has not only ignored evidence, but has also miscited and mischaracterized evidence; she has also cited evidence in support of her findings that does not actually support her findings at all and in some cases undermines them. As a result, remand is necessary.

In closing, the Commissioner argues that the ALJ relied on the opinions of a state agency doctor and a consultative examiner and that their opinions support a finding that Colon was disabled, rendering any errors by the ALJ harmless; however, this argument is unavailing. The ALJ only accorded "some" weight to the opinion of the consultative examiner (who did not reach an

ultimate conclusion regarding Colon's disability). She also only accorded "partial" weight to the opinions of the state agency psychologists who determined that Colon was not disabled, although she did state without explanation that she gave "great weight" to their conclusions except for the part of their conclusions dealing with Colon's ability to interact with others. Regarding the weight given to the opinions of the psychologists and examiner, the ALJ's logic was sound. *See* 42 U.S.C.§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). However, it was improper for the ALJ to give the conclusions of the psychologists great weight after determining that their opinions should only be accorded partial weight, at least without further explanation. It is axiomatic that a conclusion supported solely by an opinion deserving no more than partial weight should not be accorded more than partial weight itself in the absence of outside evidence. At minimum, the ALJ needed to explain how she was able to accord more than partial weight to the psychologists' conclusions when she found that their opinions merited only partial weight, and I reach no conclusion as to whether even a fully reasoned explanation would have ultimately been sufficient to avoid remand.

In short, it is clear that the ALJ did not adequately consider bipolar disorder and schizophrenia or symptoms related to those conditions in her determination. This does not mean that the ALJ's findings are necessarily wrong, but it does mean that she would have had to include more analysis of bipolar disorder, schizophrenia, and related symptoms at Step Two and beyond in order to avoid remand and that throughout her determination she would generally have to provide more careful, reasoned, and precise analysis with reference to the record. Since she did not do so, remand is necessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED** and remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of November, 2021.

S/ *Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge